## H. RICHARD MILES *v.* BYRL L. ELTZROTH.

[No. 1-176A6. Filed July 15, 1976. Rehearing denied September 1, 1976. Transfer denied December 8, 1976.]

---

*Frank E. Spencer,* of Indianapolis, for appellant.

*William M. Evans, Bose McKinney & Evans,* of Indianapolis, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Appellant H. Richard Miles (Miles) appeals from the trial court's judgment finding that Byrl L. Eltzroth (Eltzroth) was the duly elected Morgan County Superior Court Judge as a result of the general election held on November 5, 1974.

We affirm.

## FACTS

The facts necessary for our resolution of this appeal are as follows: On November 19, 1974, Miles filed a petition challenging the validity of the election for Superior Court Judge of Morgan County and seeking a recount of votes cast in the election.[1] Particularly, Miles challenges the method in which absentee ballots were handled by precinct officials and subsequently by the Recount Commission. On December 6, 1974, the trial court appointed a Recount Commission. On December 16, 1974, the Commission reported to the trial

---

1. Appellant's counsel did not take part in this case at the trial level.

court the results of their recount which concluded that Eltzroth had received eighteen [18] more votes in the general election than Miles.

Following the return of the Commission's report, Miles, on December 17, 1974, filed his objections thereto. On March 11, 1975, Eltzroth filed his response to Miles' objections with a supporting memoranda.

On March 11, 1975, Miles and Eltzroth filed the following stipulations with the trial court:

"Come now the parties hereto, by counsel, and stipulate and agree as follows:

1) There are no facts in dispute in the above entitled cause, the only question to be resolved by the Court are questions of law and are raised by the certification of recount heretofore filed in this Court.

These legal issues are as follows:

a. Should Absentee Ballots have been counted if such ballots did not contain the initials of the precinct election officials?

b. Should Absentee Ballots have been counted if after counting in the precinct they were then re-inserted in the individual Absentee Ballot envelope?

c. Should Absentee Ballots have been counted in excess of the number shown on the official precinct tally books at the time of the initial count by the precinct election officials?

2) The parties further agree *that these are the only issues remaining to be determined by the Court,* that they are legal and not factual issues, that the report of the Recount Commission is true and accurate as it pertains to the Absentee Ballots and may be considered to be factual in nature, that no evidence is therefore needed unless ordered by the Court; and the parties agree that the Court may determine the matter on the above Stipulation of Facts and legal questions raised thereby." (Our emphasis.)

On April 17, 1975, the trial court entered its judgment and found that Eltzroth was the duly elected judge of the Morgan County Superior Court.

## ISSUES

1. Did the trial court err in permitting 156 absentee ballots to be counted when the Recount Commission did not compare the signatures on the ballots with the requests for absentee ballot forms, affidavits of absentee ballot envelopes, or voter poll lists?

2. Did the trial court err in permitting these absentee ballots to be counted which did not bear the initials of the poll clerks?

3. Did the trial court err in permitting these same ballots to be counted even though they were returned in opened individual absentee ballot envelopes?

At the outset of this opinion, we are relegated to the unpleasant position of having to find that one of the alleged errors that Miles would have us now review was waived.

Issue number one, *supra*, which appeared in Miles' motion to correct errors was not one of the three issues stipulated by the parties to the trial court as the only issues which the trial court needed to resolve. Therefore, since the trial court was denied the opportunity to resolve this issue because of the stipulation agreement entered into freely by the parties, we will not now resolve this issue for the first time on appeal. *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 55, 73 N.E. 824.

## ISSUES TWO AND THREE

We have elected to consolidate Miles' contentions of error two and three because our reasoning and holding in this opinion are equally applicable to each. Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Miles argues that it was error for the Recount Commission to count 156 absentee ballots in the Precincts of Brown 2, Jackson 1, Jefferson 1 and Washington 3, said ballots not having been initialed by the poll clerk. Also, he argues the ballots should not have been counted because they were re-

turned in opened absentee ballot envelopes thus removing the cloak of secrecy from the election process.

This court, after having examined the 156 absentee ballots in question, must agree with Miles that the poll clerks' initials do not appear on the absentee ballots, and the carrier envelopes are not present for all ballots.

IC 1971, 3-1-22-12 (Burns Code Ed.) provides *inter-alia:*

". . . the election inspector shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon and take out the ballot or ballots inclosed therein without unfolding or permitting the same to be unfolded or examined. *The inspector shall then deliver such ballot or ballots to the clerks, who shall at once proceed to write their initials, above the signature of the clerk of the circuit court or the secretary of state as the case may be,* in ink on the lower left-hand corner of the back of each of such ballots in their ordinary handwriting and without any distinguishing mark of any kind and in the same manner as other ballots are required to be indorsed. The inspector shall thereupon deposit the same in the proper ballot-box or ballot-boxes and enter the absent voter's name in the poll list, the same as if he had been present and voted in person." (Our emphasis.)

IC 1971, 3-1-25-1 (Burns Code Ed.) provides in relevant part:

". . . *And in the canvass of the votes any member of the election board may protest as to the counting of any ballot, or any part thereof, and any ballot which is not indorsed with the initial of the clerks, as provided for in this act [3-1-1-11—3-1-33-2],* and any ballot which shall bear any distinguishing mark or mutilation shall be void, and shall not be counted, and any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate, or candidates, affected thereby; and all ballots, voted and not voted, together with all protested, disputed or uncounted ballots and certificates of the election board and tally sheets, shall be preserved . . ." (Our emphasis.)

The strict letter of the above cited statutes were not followed by the precinct election officials; however, this does not necessitate a reversal of this cause.

The issue of the poll clerks' absence of initials on the validity of absentee ballots was before our Supreme Court in the case of *Lorch* v. *Lohmeyer* (1969), 252 Ind. 182, 247 N.E.2d 61. The court therein at pages 67-68 held:

"As to Exhibits Nos. 7, 8, 21, 31, 34, 43, 44, 63, 64 and 67, an examination of these ballots discloses that none of them contains the poll clerks' initials thereon. This Court has previously held that an absentee voter's ballot is not invalid merely because the Election Board's poll clerks fail to initial the back thereof where the voter has fully complied with all the legal requirements and has placed the ballot beyond his control. *Boone* v. *Smith* (1947), 225 Ind. 617, 77 N.E.2d 357; *Wright* v. *Walker* (1926), 197 Ind. 561, 151 N.E. 424.

The case of *Sims* v. *George* (1968), 250 Ind. 595, 14 Ind. Dec. 339, 236 N.E.2d 820, has been erroneously annotated as holding that absentee ballots without poll clerks' initials are invalid. Although the opinion describes the questioned ballots as not bearing such initials it further describes other defects and holds the ballots invalid because of those defects and not because of the absence of the poll clerks' initials.

Further an examination of the above ballots discloses that they each are impressed with the official seal of the Floyd Circuit Court and the signature of William C. Cochran, Clerk, Floyd Circuit Court.

This Court has stated:

'It seems clear that the sole intention of the Legislature by the enactment of this provision was to provide a proper identification of absent voters' ballots whereby not only the voter who received the ballot, but the various election board officials, would be able to determine, upon examination of the ballot, whether or not it was a valid official ballot which had been sent out from the county clerk's office in the manner provided by law. When the county clerk has performed his duty in connection with the signing, sealing and mailing of absent voters' ballots in such a way as to authenticate and identify them in such a manner as to cause the voter who received them, upon inspection thereof, to conclude that the ballot is official, and such authentication and identification is accepted as being proper, by the various election board officials in all the precincts to which any absent voters' ballots are returned, then it must be said that such authentication and identification satisfies the requirements of the statute.'

> *Brown* v. *Grzeskowiak* (1951), 230 Ind. 110, 133, 134, 101 N.E.2d 639, 102 N.E.2d 372.'
>
> The ballots in the case at bar meet the above test in every way. The Trial Court was, therefore, correct in his decision that these ballots be counted."

*See also, Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N.E. 149.

The rationale of our Supreme Court in *Boone, supra,* for permitting these ballots to be counted is equally applicable to the case at bar. Therein at page 360 our court stated:

> ". . . To hold otherwise would prepare an easy path for fraud, for how easy it might be for election officials in a conspiracy in a certain election district to place absent voted ballots in the ballot box without the initials of the poll clerks in a sufficient quantity to defeat an election by a majority of the electors. Such is not the purpose of the law, and it has so been held in many jurisdicions. . . ." (Citations omitted.)

This rationale would be equally applicable to Miles' second assignment of error. In addition, in the case of *Brown* v. *State ex rel. Stack* (1949), 227 Ind. 183, 84 N.E.2d 883, at page 192, it is stated: "Any voter who wished to avail himself of the right to vote by absent voter's ballot waived some of the provisions of secrecy available to him if he voted in person at the polls."

We do not wish to be understood as holding that the statutory procedures for the attainment and voting of absentee ballots may be disregarded with impunity. Such is not the import of our decision. We wish to emphasize that to preserve the sanctity of the franchise a distinction must be drawn between procedures to be followed by election officials *before* the voter receives his absentee ballot, and procedures to be followed by election officials *after* the absentee voter has cast his vote. For example, in the case of *Werber, supra,* it was held to be error to count an absentee's ballot which did not possess the seal of the circuit court clerk as presently provided for in IC 1971, 3-1-22-5 (Burns Code Ed.). This provision of our election law was held to be mandatory because the voter.

himself could have had this error corrected by requesting a properly sealed ballot. In the case of the poll clerk initialing the ballot after its receipt from the absentee, the voter then has no way of knowing whether the clerk has complied with the statute or not.

The distinction which we make today is by no means novel. In *Brown* v. *State ex rel. Stack, supra,* our Supreme Court stated, at page 189:

> "The failure on the part of the applicants to verify their applications was not due to any default, neglect or fraud on the part of any of the election officials, so the facts do not fall within the rule that failure of an election official to execute a directory requirement of the law shall not cause a voter to have his ballot rejected. In *Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N.E. 149, this court clearly recognized the distinction between such cases, when it held that the failure of the clerk of the circuit court to place upon the absent voter's ballot his official seal invalidated the ballot, while on the other hand the failure of the poll cerk to initial the ballot after it had been received by the precinct board and before being deposited in the ballot box, was an irregularity which did not void the ballot. The provisions requiring the verification of the application were intended to safeguard the purity of elections and were conditions precedent to lawfully obtaining absent voters' ballots."

We hold that the trial court did not err in approving the Recount Commission's tally of proper absentee ballots. For us to hold otherwise would be to in effect disfranchise absentee voters who have done everything within their power to cast a valid vote which the law or reason can in good faith demand.

Finding no error in the proceedings below, the judgment of the trial court is affirmed.

Robertson, C.J., concurs; Hoffman, J., participating by designation, concurs.

NOTE.—Reported at 351 N.E.2d 77.